Submitted on briefs November 1, affirmed December 12, 1916.

## HILL v. AMERICAN LAND & LIVESTOCK CO.*

### (161 Pac. 403.)

**Waters and Watercourses—Appropriation for Irrigation—Desert Land Act.**

1. Under the Desert Land Act, Act Cong. March 3, 1877, c. 107 (19 Stat. 377, U. S. Comp. Stats. 1901, p. 1548), which provides that all surplus water over and above the actual appropriation and use for reclamation of desert land under the act, "together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation," etc., subject to existing rights, a defendant, whose title was derived from patent from the United States government by virtue of a homestead entry, and who had made no appropriation of water from a stream upon which his land had bordered since 1877, could not, by reason of the mere abuttal upon the stream, defeat or diminish a prior appropriation made under the act.

**Waters and Watercourses—Appropriation for Irrigation—Evidence—Sufficiency.**

2. In a proceeding to determine riparian rights, evidence *held* to support a finding that a defendant had never, by ditches or otherwise, used or appropriated water for irrigation purposes from an abutting stream, except seepage water escaping from another irrigation system.

[As to what constitutes appropriation of water, see note in 60 Am. St. Rep. 799.]

**Waters and Watercourses—Appropriation for Irrigation—Right to Use of Waste Water.**

3. It being the duty of an appropriator of water for irrigation to use ordinary methods to prevent waste, while a temporary use may be made of seepage water, allowed to escape by excessive use of water, by anyone who may capture it, no permanent right can be acquired to compel the continuance of the discharge or loss.

———————

*On right at common law of prior appropriators of water, see comprehensive note in 30 L. R. A. 668.    REPORTER.

Waters and Watercourses—Appropriation for Irrigation Proceedings —Pleading—Misjoinder of Parties Plaintiff.

4.   Under Section 393, L. O. L., providing that "all persons having an interest in the subject of a suit, and in obtaining the relief demanded, may be joined as plaintiffs, except as * * otherwise provided"; and that "any person may be made a defendant who has or claims an interest * * adverse to the plaintiff, or who is a necessary party to a complete determination * * of the questions involved," in a proceeding to determine riparian rights to water for irrigation purposes, the thing in controversy being the whole mobile flowage of the stream, and no adequate determination being possible without the presence of all interested in the entire flowage, the joinder of a plaintiff who claimed riparian rights on the stream was proper.

From Harney: DALTON BIGGS, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

This is a suit by Edwin B. Hill, Charlotte E. Sturgeon, Rose E. Doan, Melvin Doan, John McLain, Fred Allen, E. J. Catlow, E. M. Schroeder, Dave Defenbaugh, Frank Adrian, John Beatty, Mary Beatty and Carl A. Thomsen, against the American Land & Livestock Co., a corporation, C. E. Thomas and ——— Walter, a partnership doing business as Thomas & Walter, John Polander, C. S. Allgard, H. J. Bamford, A. W. Quincy, J. E. Rounsevelle, Sarah K. Wiggins, Michael J. Woods, Joseph Kralik, Blanche Lyndall, E. J. Dean, G. Henry Gils, W. S. Estell, Cornelius Mandeville, Norman J. Ross, Harry Slough, Oscar Christopherson, S. Waterfall, William J. Kennedy, Lydia E. Fryer, Hubert Wynhoff, P. E. Carlton, E. A. Homes, Henrietta C. Bates, Hilding Ryden, George H. Miller, Gustave O. Schreiber, F. L. Whelply, Mary J. Wulstein, William Kent, William T. Styles, Clarence F. Clark, F. E. Pepper, Arnold E. Archibald, Lawrence Clark, Velda M. Beal, Robert Scott, and Pacific Livestock Company, a corporation, to adjudicate the rights of the various parties to the use of the waters of Trout Creek, in Harney County, Oregon.   The plaintiffs describe their realty holdings, the several amounts of

their appropriations of water, and the use to which they have put it. Concerning the defendants, after reciting the corporate character of some of them and the existence of the partnership of two others, the complaint states that they—

"and each and every one claims an interest in and rights to the waters of said Trout Creek, but that the rights of each and every one of the said defendants, except as herein otherwise stated, are inferior to and subject to the rights of the plaintiffs as herein alleged, and that each and every one of the said parties defendant are necessary parties to this suit, in order to obtain a final determination of the subject matter thereof."

The prayer is for a decree, determining the relative rights and priorities of the parties to the waters mentioned. The Pacific Livestock Company, one of the defendants, and the only party appealing from the decree, answered, denying all the allegations of the complaint. After averring its ownership of 160.26 acres of land, its answer proceeds as follows:

"That Trout Creek flows, and from time immemorial has flowed, through, over and upon these said lands, and which said lands are riparian thereto, and riparian rights attached thereto, and the said defendant is entitled to have the water of said creek flow by, through, over, and upon the said lands, and to make such use of said water as a riparian owner is entitled to make thereof. That in the year 1889 the said defendant, its predecessors and grantors, entered into and upon the said creek by means of ditches, dams and other works, and took and appropriated from the said stream to and upon the lands aforesaid 40 miner's inches of water measured under a 4-inch pressure, and applied the same to the irrigation of said lands, the watering of stock, and other beneficial uses, and ever since said time said defendant and its predecessors and grantors have continuously, uninterruptedly under a claim of right, adversely to the said plaintiffs and the defend-

ants herein and to all the world, taken, appropriated, diverted and used the said water, and the whole thereof, and all of the same has been, and still is being, applied to beneficial uses, and defendant is now the owner of the right to take, appropriate and use the amount of water aforesaid. As a further defense to the said suit, the said defendant alleges that there is a misjoinder of causes of action in said suit, in that each of the plaintiffs herein as an appropriator of said water has a distinct and separate right of property not owned in common or jointly, with the other plaintiffs, and each of said plaintiffs has a separate cause of action to protect the said property, and the said causes of action cannot be joined, and the same are improperly joined in said suit.''

This in turn was denied by the reply. After a full hearing on the issues the court, among others, made the following finding of fact:

''That one John Porter made homestead entry of the east half southwest quarter and lot 4, section 18, township 39 south, range 37 east, W. M., containing 160.26 acres, for which he obtained patent from the United States in June, 1891, and by mesne conveyances the Pacific Livestock Company, a corporation, one of the defendants herein, acquired title thereto. It appears from the evidence that no ditch was ever taken from Trout Creek, and that no water is used from that stream for the irrigation of this ranch, except seepage water that arises on or near the place, from the irrigation of Frank Adrian's place. That from such seepage water about 25 acres on the north side of Trout Creek is irrigated, and about 15 acres on the south side of the creek. No appropriation from Trout Creek can be made for this land, for the reason that the water used is seepage water. Nothing should be construed here, however, as preventing the company from making use of the seepage water from the Adrian place.''

Thereupon the court entered a decree, declaring the rights of the other parties to the suit, without mention of the Pacific Livestock Company. As to that defendant the only feature of the decree otherwise affecting it is this last clause thereof:

"The temporary injunction heretofore granted in this case is hereby dissolved, and each and every party to this suit and those claiming by, through, or under them are hereby enjoined from using the water of any of the streams, the rights of which have been herein determined, in any manner or amount contrary to the provisions of this decree."

Only the Pacific Livestock Company appeals.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellant there was a brief over the names of *Mr. Edward F. Treadwell* and *Mr. John L. Rand.*

For respondents there was a brief over the names of *Mr. J. W. Biggs, Mr. Gustav A. Rembold, Mr. P. J. Gallagher, Messrs. McColloch & Wood, Mr. A. W. Gowan, Mr. John S. Cook* and *Mr. Charles W. Ellis.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The testimony shows that the Pacific Livestock Company, for convenience called the defendant, deraigned title from one John Porter, who in turn had it from the United States government by virtue of homestead entry, which was made by him on April 23, 1888, resulting in a patent dated June 13, 1891. This renders it subject to the act of Congress of March 3, 1877, commonly known as the "Desert Land Act,"

which provided that all surplus water over and above the actual appropriation and use for reclamation of desert land under the act, "together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights * * ": Act Cong. 1877, c. 107 (19 Stat. U. S. 377, 6 Fed. Stats. Ann. 392, U. S. Comp. Stats. 1901, p. 1548).   This provision is thus construed by this court in *Hough* v. *Porter,* 51 Or. 318, 404 (98 Pac. 1083, at 1097):

"The language used in this act was clearly intended to change the rule respecting the right of riparians to the use of water for irrigation, mining and power purposes; but, as in the last case cited, it has its limits. It does not go so far as to affect the rights originally giving rise to the doctrine of riparian rights; that is, for domestic use, including the watering of domestic animals and such stock as may be essential to the sustenance of the owners of lands adjacent to the streams or other bodies of water."

Thus it is made plain that riparian rights are not the same in essential particulars as the common-law privilege thus designated.   In the arid and semi-arid regions of the west the principal thing is the beneficial use of water as contrasted with its mere presence under the old common-law doctrine that a person whose lands abutted upon a stream was entitled to have it flow past his premises as it was naturally wont to do undiminished in quantity except for domestic purposes and unimpaired in quality.   The rule had its rise in England, where irrigation was at the time practically unknown.   The modification embodied in the act of Congress referred to and in the general legislation of the semi-arid western states is founded upon the neces-

sity of the situation and the principle of making the water do the greatest good to the greatest number. It may well be doubted, therefore, whether the allegation of the defendant's answer, to the effect that riparian rights attach to its lands by virtue of the creek running through it, is more than a conclusion of law, or presents any obstacle to the prior appropriation of other parties taking advantage of the reservation annexed by the government to its lands, permitting its appropriation by the first comer of the waters flowing thereon. If other persons, operating under the Desert Land Act had previously appropriated all the water of the stream, it seems that the riparian rights as known at common law, attaching to the land in question in favor of a subsequent taker, would be negligible. Because public land since 1877 bordered a stream, it does not necessarily follow that one holding it by subsequent title can defeat or diminish a prior appropriation made under the act. To work out such a result something more must be shown than mere abuttal upon the stream bed.

2. All the testimony affecting the defendant appears in the abstract. John C. Beatty, a foreman for many years for the defendant, testified that the only water that goes upon the land in question is seepage water from the Frank Adrian place next above it on the stream. He says that a successor of his plowed some in an old ditch on the defendant's land, but that he never saw any water in it. It seems it was not connected directly or indirectly with Trout Creek. He is clear in his statement that the only water going upon the place, aside from the stream, is seepage from the place above, and that the only use to which the property in question was put was for pasturage, or to hold cattle there **three or four or five days during the rodeo.**

There is utterly no testimony to support the allegation that the defendant entered upon the creek and by means of ditches, dams and other works appropriated water therefrom.   The finding of fact quoted is amply supported by the testimony.

3. The complaint of the defendant is that in prescribing the amount of water which Adrian was entitled to use, no provision was made for continuing the seepage upon which the defendant depends for moisture upon its land.   The principle governing such a case is thus enunciated in 2 Kinney, Irrigation and Water Rights (2 ed.), Section 1115:

"In a previous chapter upon the subject of the economic use and the suppression of waste we endeavored to show that in all enterprises for the use of water there is more or less of the water lost to the appropriators from what is called necessary waste.   This is the water which escapes from the ditches, canals or other works, and which cannot be avoided by the ordinary precautions commonly used in the construction of the works.   And while it is the duty of the appropriator to use ordinary methods to prevent this waste, he is not compelled, under the law, to use extraordinary methods.   However, as 'water is a movable, wandering thing,' under the best methods known to man, some of the water will escape.   To this necessarily lost water, while a temporary use may be made of it by anyone who may capture it, no permanent right can be acquired so as to compel the continuance of the discharge or loss."

The modern doctrine in the western states is that no person has a right to use more water under his appropriation than can be beneficially applied to some useful purpose.   If, therefore, Adrian violated this rule by his excessive use of the water, he had no title to the surplus, and neither could the defendant acquire any ownership therein.   The latter would be in no

better position than the receiver of stolen goods. It cannot call upon the court to compel Adrian to continue in his wrongful and prodigal use of the water so that the defendant may be benefited by the resulting seepage. The allusion to seepage in the finding of the court already quoted manifestly refers to that unavoidable escape of water referred to in the excerpt from the writings of Kinney. The evidence does not disclose any impairment of riparian rights as modified by the Desert Land Act. Under the finding of fact the decree might have been made more specifically stringent upon the defendant. Its rights were not prejudiced by the conclusion of the court.

4. It was also charged by the answer that there was a misjoinder of causes of action in that each appropriator was an owner in severalty, and could not join with others in this class of litigation; but that point has been adversely determined by this court in applying Section 393, L. O. L., reading thus:

"All persons having an interest in the subject of the suit, and in obtaining the relief demanded, may be joined as plaintiffs, except as in this title otherwise provided. Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein."

The rule is established in the following precedents: *Williams* v. *Altnow,* 51 Or. 275 (95 Pac. 200, 97 Pac. 539); *Hough* v. *Porter,* 51 Or. 318, 404 (98 Pac. 1083, 1097); *Whited* v. *Cavin,* 55 Or. 98 (105 Pac. 396); *Lockhart* v. *Ferrey,* 59 Or. 179 (115 Pac. 431). The thing in controversy is the whole mobile flowage of the stream. At the outset, under the very nature of things, no one can tell what particular drop of water is his own. It is the use of an aliquot part of this

amount which is in question; and no adequate determination of the same can be had without the presence of all who are interested in the entire flowage of the stream.    Error is not apparent in the decree.    It is affirmed.                                          AFFIRMED.