Argued at Pendleton October 29, affirmed as modified December 23, 1919.

## LAURANCE v. BROWN.

(185 Pac. 761.)

**Waters and Watercourses—Acquisition of Water Rights by Appropriation not Dependent on Riparian Ownership.**

1. A water right acquired by an appropriation and beneficial use upon land in the quiet possession of the appropriator, and upon which he has made valuable improvements and reclaimed in part, is not dependent upon the title to the soil upon which the water is used, in view of Rev. Stats. U. S., Section 2339 (U. S. Comp.

Stats., § 4647), Sections 6534, 6561, L. O. L., Section 6594, as amended by Laws of 1913, page 273, and Section 6595, and Laws of 1913, page 531.

From Grant: DALTON BIGGS, Judge.

In Banc.

This is a suit to determine conflicting claims to the waters of Graham Creek, in Grant County.    The trial court awarded the plaintiffs a prior right and defendants appealed.

Graham Creek is a non-navigable perennial stream having its source in a spur of the Blue Mountains, emptying its waters in the John Day River.    From the bottom lands bordering on this river the hills rise on either side, forming the bench lands which extend to the mountains.    Through these bench lands are gulches, some of them dry or such as contain a flow of water only in times of freshets.    On the south of the John Day River and west of Graham Creek, above Prairie City, is one of these dry gulches, known for a long time as Winegar gulch.

AFFIRMED AS MODIFIED.

For appellants there was a brief and an oral argument by *Mr. A. D. Leedy.*

For respondents there was a brief over the names of *Mr. Erret Hicks* and *Mr. George H. Cattanach,* with an oral argument by *Mr. Hicks.*

BEAN, J.—From a careful reading of the testimony and record in the case and after an examination and consideration of the briefs of the respective parties we find the following:

About 1870, A. C. Clark settled upon the SW. ¼ of the NW. ¼ and the NE. ¼ of the SE. ¼ of Sec. 21

and the SW. ¼ of the NW. ¼ and the NW. ¼ of the
SW. ¼ of Sec. 22, Tp. 13 S., R. 34 E., W. M., in Grant
County, Oregon, the same being then vacant public
land of the United States.  June 2, 1870, Clark filed
with the clerk of Grant County a notice of intention
to appropriate all the waters of Graham Creek for
irrigation purposes, and thereafter selected a point of
diversion for a ditch on the west side of the creek
and near the center of the NE. ¼ of the SW. ¼ of
Sec. 15, Tp. 14 S., R. 34 E., W. M., and commenced
the construction of a ditch for conveying the waters
of Graham Creek from that point to the above-men-
tioned land for the purpose of watering livestock and
irrigation purposes, and during the year 1871, com-
pleted the ditch to a gulch known as Winegar gulch.
In 1872, Frederick Winegar settled upon the NW. ¼
of the NE. ¼ of the NW. ¼ of Sec. 28, Tp. 13 S.,
R. 34 E., W. M., and on January 29, 1872, purchased
from A. C. Clark his interest in the above-described
Graham Creek ditch and water right, and in the
spring of that year began the construction of a ditch
from a point about one fourth of a mile below the
head of the ditch commenced by Clark and completed
the construction thereof to the said lands and con-
veyed the waters of the stream through the ditch to
and upon the land for irrigation and domestic pur-
poses, and on March 30, 1880, the land was conveyed
to Winegar as a homestead.

About April 4, 1873, Frederick Winegar became the
owner of the S. ½ of the SE. ¼ and the NW. ¼ of
the SE. ¼ of Sec. 21, Tp. 13 S., R. 34 E., W. M., in
Grant County, known as "Road Lands," and during
that year appropriated and used water from Graham
Creek ditch to irrigate a portion thereof.  Winegar
continued in the possession and ownership of the

above-described land in Sections 21 and 28 until his
death, April 29, 1889; and while he occupied the lands,
cultivated and irrigated 66.4 acres, and raised thereon
grain, hay, orchard and garden, and used the waters
for stock and domestic purposes. In 1881 the SE. ¼
of Sec. 28, the E. ½ of the SW. ¼, and the SE. ¼
of the NW. ¼ and the SW. ¼ of the NE. ¼ of Sec.
28, Tp. 13 S., R. 34 E., W. M., being unoccupied,
Frederick Winegar took possession, began the culti-
vation of the land and diligently used the waters of
Graham Creek in the irrigation of a portion thereof
until December, 1886, when Charles H. Winegar, his
son made a pre-emption filing on the above-mentioned
SE. ¼ of Sec. 28, and thereafter occupied and tilled
the same and used such waters for the irrigation of
58 acres thereof and on October 13, 1891, obtained title
to the lands from the United States. Frederick
Winegar continued to occupy the E. ½ of the SW. ¼,
the SE. ¼ of the NW. ¼ and the SW. ¼ of the NE.
¼ of Sec. 28 heretofore described, until his death, and
reduced to cultivation 30.3 acres of the land and irri-
gated it with the waters of Graham creek and ditch.

After the death of Winegar his estate was admin-
istered in the County Court of Grant County and all
of the Frederick Winegar lands including the ditch
and water rights appurtenant thereto were sold by his
legal representatives to John T. Bailey November 8,
1899. On the same date Charles H. Winegar sold to
Bailey the SE. ¼ of Sec. 28, Tp. 13 S., R. 34, with all
of his interest in the ditch and water right used in
connection with the land. At the time of this sale
the E. ½ of the SW. ¼ and the SE. ¼ of the NW. ¼
and the SW. ¼ of the NE. ¼ of Sec. 28, heretofore
mentioned, continued to be unentered government

land, but had been previously occupied and irrigated by Frederick Winegar with the waters from Graham Creek ditch. After the sale of the premises to Bailey, he occupied and cultivated all of the lands above described, including the unentered lands, until January 11, 1902, when he made entry upon the last described land under the desert land laws of the United States, and held and cultivated the lands until January 26, 1906, when they were conveyed to him by patent from the United States.

June 11, 1900, Bailey sold to Mrs. Laura Weeks the NW. ¼ of the SE. ¼ of Sec. 21, Tp. 13 S., R. 34 E., W. M., and thereafter Bailey and his successors in interest farmed all of the remainder of the lands and continuously used the water of Graham Creek through the ditch in irrigation thereof and for stock and domestic purposes, until September 29, 1906, when the whole of the lands and water rights were sold to E. P. Laurance. About April, 1907, for the purpose of bringing a part of the waters of Graham Creek on to the land owned by him in sections 28 and 21, Laurance constructed a branch ditch from the Winegar ditch, taking it out about a half mile below the head of the ditch and extending it in a northwesterly direction. In 1907, he commenced the use of waters from this branch ditch for the purpose of irrigating the land then in cultivation in section 33 along the Winegar gulch, the same being land which he was entitled to irrigate with the waters from Roberts Creek ditch, replacing those so used with the waters from the Roberts Creek ditch so that no greater amount of water was used from the Graham Creek ditch than had theretofore been used by him and his predecessors in interest. Laurance occupied, cultivated and irri-

gated the lands until the time of his death, September 5, 1912.

The plaintiffs, S. A. Laurance and Ellen L. Laurance and Hester Paulus are the heirs at law of E. P. Laurance, deceased, and since the date of his death have been and now are the owners of all the lands purchased by Laurance, and have cultivated and irrigated them until the commencement of this suit. The plaintiff, Nellie Gillespie, is the owner by mesne conveyances from Mrs. Laura Weeks of the NW. ¼ of the SE. ¼ of Sec. 21, Tp. 13 S., R. 34 E., W. M., and has cultivated the lands and used the waters of Graham Creek for the irrigation of same until the commencement of this suit.

For about fifteen years prior to this suit plaintiffs and their predecessors have used the water from Graham Creek for the irrigation of their lands practically in the same manner as claimed by them without interference or question on the part of defendants, indicating that during all of such time the right to the water by defendants and their predecessors was inferior and subject to the rights of plaintiffs, and that it was so considered by the interested parties. The total amount of land irrigated and reduced to cultivation by the plaintiffs and their predecessors in interest is 154.7 acres. The date of the relative priority of the appropriation of such water of plaintiffs is 1873.

The defendants are the owners of the NW. ¼ of Sec. 14, Tp. 14 S., R. 34 E., W. M., which was settled upon in 1872, by Mark Dinsmore and was transferred through different parties to M. A. Preston who secured title thereto from the United States on February 23, 1886. In 1881, Preston took a ditch out of Graham Creek at a point some distance below the

point of diversion of the Winegar ditch and irrigated about 28 acres of the land last described. At that time plaintiffs' predecessors were using the water from Graham Creek for all of the lands irrigated by them.· Defendants and their predecessors have only used such water as flowed past the head of the Winegar ditch.

The trial court awarded plaintiffs a prior right to three cubic feet per second, or 120 miner's inches, of water as a continuous flow during the irrigation season from April 1st to September 1st of each year, not to exceed a total flow of more than three acre-feet per acre·for 154.7 acres of their land, and decreed that thereafter the plaintiffs are entitled to the usual flow of the creek for stock and domestic purposes; and found that the irrigation season, including irrigation for pasture, begins about April 1st and extends to about September 1st of each year, and that three acre-feet per acre is sufficient for the irrigation of the lands of plaintiffs and defendants. The trial court concluded that defendants are entitled to the use of the waters of Graham Creek through what is known as the Brown or Preston ditch, diverted at a point near the northeast corner of the NE. ¼ of the NE. ¼ of Sec. 15, Tp. and range aforesaid, sufficient for the irrigation of 28 acres of land in the NW. ¼ of Sec. 14, Tp. 14 S., R. 34 E., W. M., not to exceed three acre-feet per acre during the irrigation season from April 1st to September 1st, and not exceeding a continuous flow of one miner's inch per acre; and that defendants' appropriation and right to the use of water is subject and inferior to the right of plaintiffs to the amount allowed to plaintiffs for the irrigation of their land.

The date of the relative priority of the defendants' appropriation of such water from Graham Creek is 1881. It appears that some water from Graham Creek was used by defendants' predecessors prior to that date, but that for a long time the water for defendants' lands has been obtained from another stream.

From the testimony it appears to us that by a judicious and thorough use of the amount of water allowed plaintiffs during the season until July 1st of each year, and thereafter a careful use of water at the rate of one cubic foot per second for 80 acres, or approximately one-half inch of water, miner's measurement, under a six-inch pressure, would be sufficient to properly irrigate plaintiffs' lands. This quantity should be measured at the head of the lateral ditches or where the same is taken from the main ditch. The amount in the aggregate for each season is not to exceed three acre-feet of water per acre. After September 1st plaintiffs should be allowed a sufficient amount of water for watering their livestock and for domestic purposes. Subject to the rights of plaintiffs, after the first of July of each year in case there is sufficient water flowing in Graham Creek, the defendants should be allowed the same amount of water to the acre or one eightieth of a cubic foot per second, per acre, for 28 acres. After the amounts of water awarded to the respective parties, or so much thereof as the parties may economically use without any unnecessary waste, the remainder of the waters of Graham Creek should be permitted to flow down its accustomed channel. To the extent above indicated the decree of the lower court will be modified. The change may affect the situation from about the first to the tenth of July, a somewhat critical time depending on the amount of water in the stream.

There is some contention on behalf of defendants as to the water right appurtenant to the land entered as a pre-emption by Charles Winegar in 1886, the appropriation having been made and the water applied to this land while it was still a part of the public domain by the father of the entryman. The same position is taken as to the use of water upon the land embraced in the desert entry of John T. Bailey.

When the western states were organized and adopted their Constitutions, there was found to be a custom which had grown from the use of water for mining purposes and the irrigation of small crops, to an expanded use by the early settlers and to the appropriation of, water for the irrigation of larger tracts of land, and for other beneficial uses, independent of or without regard to riparian rights. Many water rights were then held by virtue of such custom and few or none under claim of riparian ownership. The result obtained that so far as such customary rights existed, with reference to streams upon the public domain, they were recognized as establishing a good title. When many of the states were formed provision was made for the acquirement of water rights by appropriation rather than by riparian ownership: 1 Farnham on Waters and Water Rights, 605. The case of *Crawford Co.* v. *Hathaway,* 61 Neb. 317 (85 N. W. 303), is authority for the statement that U. S. Rev. Stats., Section 2339 (U. S. Comp. Stats. 1912, § 4647; 9 Fed. Stats. Ann. (2 ed.), p. 1349), was not intended to grant from the federal government to the people of the state the waters on the public domain, but to confirm the rights of those who have acquired, under certain conditions, the use of the water, and calls that right a vested one, even though the waters are taken from streams

upon the public domain and without the assent of the
government. The right to appropriate water exists
without private ownership in the soil or without perfect
title thereto, as against all persons except the govern-
ment or its grantees: Gould on Waters (3 ed.), §§ 230,
240; *Hill* v. *Newman,* 5 Cal. 445 (63 Am. Dec. 140);
*Hough* v. *Porter,* 51 Or. 318, 421 (95 Pac. 732, 98 Pac.
1083, 102 Pac. 728).

In an early act of the legislature of this state relat-
ing to the appropriation of water for general use and
irrigation, "all existing appropriations of water made
for beneficial purposes" in accordance with law, rule
of court or established custom, are declared to be re-
spected and upheld: Section 6534, L. O. L. The same
provision was made in the act of 1899 (Section 6561,
L. O. L.), and in the Water Code of 1909, the vested
rights of any person to water are carefully preserved
unimpaired: See Sections 6594 (amended by Gen. Laws
of Oregon 1913, p. 273) and 6595, L. O. L. Our statute
provides that beneficial use shall be the basis, the
measure, and the limit of all rights to the use of water
in this state: Gen. Laws of Oregon 1913, p. 531; *Hill*
v. *American Land & Livestock Co.,* 82 Or. 202, 209
(161 Pac. 403). Such right acquired by an appropria-
tion and beneficial use upon land in the quiet posses-
sion of the appropriator and upon which he has made
valuable improvements and reclaimed in part, is not
dependent upon the title to the soil upon which the
water is used. That question can only arise between
conflicting claimants to the title to land reclaimed by
irrigation, and does not enter into this case. We there-
fore conclude that the point contended for by counsel
for defendants is not well taken.

The evidence clearly supports the findings of the Cir-
cuit Court in the main. With the slight modification

above suggested the decree of the lower court is affirmed. Neither party will recover costs or disbursements in this court.   AFFIRMED AS MODIFIED.