Argued December 5, 1919, reversed and decree rendered January 27, 1920.

## TYLER *v.* OBIAGUE.

(186 Pac. 579.)

**Waters and Watercourses—Lower Appropriator cannot Compel Excessive Use by Upper Owner to Get Surplus.**

1. A lower appropriator has no right to compel one who has taken out water above him to maintain an excessive use of water so that the former may get the benefit of the surplus, although the upper appropriator has permitted the lower appropriator to construct a ditch on his land to convey surplus waters.

From Harney: DALTON BIGGS, Judge.

Department 1.

The lands of all the parties to this suit lie in Warm Springs Valley in Harney County and the general slope there is easterly and southeasterly across all

the property involved. The western boundary of the plaintiffs' land coincides with the eastern limits of the lands of the defendants. Silver Creek is a stream running from northwest to southeast. Cote Slough is a defluent of Silver Creek and runs southeasterly through the western part of the lands of the defendants. In that region the spring thaw comes sometimes in the latter part of February, but usually in the month of March. The result is that Silver Creek rises very rapidly, filling Cote Slough to overflowing, so that the water from the slough spreads all over the lands in question to such an extent that, as described by one of the witnesses, it becomes practically a lake. This condition continues usually from a month to six weeks, when the waters begin to subside and settle into depressions or swales which exist in the floor of the valley.

The predecessor in interest of the defendants put a dam in Cote Slough on his own premises, prior to the time that the plaintiffs took title to their lands, and diverted water therefrom for the purpose of irrigation after the spring floods had gone down. He conducted it part way across the present holdings of the defendants. By means of check dams in the ditch and levees across the depressions on his premises he caused the water to spread out over his lands after the flood had subsided and the water in Cote Slough was within its banks. This is the customary method of irrigation in that country and was the only practical way by which crops could be raised. Later on, the plaintiffs dug a ditch from one of the swales in the eastern margin of the defendants' present holdings for the purpose of carrying the flood waters over their lands for use in irrigation. Still later, defendants' predecessor in interest commenced the construction of a ditch across his

land, leading from th' eastern terminus of the old ditch to his eastern boundary. He plowed some furrows and gave permission to the plaintiffs to scrape out the earth and finish the construction of the ditch for the purpose of more quickly conveying the flood waters upon the plaintiffs' lands. The plaintiffs availed themselves of this privilege and completed that ditch, connecting by means thereof the original ditch tapping the slough and the one dug mainly on their own ground, so that now there is a continuous line of ditch from Cote Slough across the lands of both plaintiffs and defendants.

It is charged by the complaint, in substance, that the defendants have assumed control over this third or connecting ditch, and have put into it check dams and like obstructions for the purpose of spreading the water over their lands. The plaintiffs bring this suit to enjoin any interference with that part of the waterway; to prevent the defendants from checking or stopping on their own land the flow of water through the natural swales and depressions to and upon the lands of the plaintiffs; and to obtain a decree declaring the plaintiffs to be the owners of the connecting ditch and of sufficient waters of Cote Slough for the irrigation of their lands.

The complaint is traversed in material particulars and the defendants claim that by virtue of their purchase from the original appropriator they are entitled to the water diverted by artificial means from Cote Slough, and that they further have the right by use of check dams put in the connecting ditch to divert that water upon their own lands for purposes of irrigation. They claim, too, that the plaintiffs are estopped to make the contention of their complaint, because when the defendants purchased the land they interviewed

the plaintiff S. F. Tyler, who told them substantially that all he claimed was to get the flood waters that spread over the whole vicinity. The defendants allege that in the years 1916 and 1917 the plaintiffs tore out the checks in the ditch after the flood waters had subsided, with the result that all the water was drained from the defendants' land and their crops were injured for want of irrigation, to their damage in the sum of $750. The new matter in the answer was controverted by the reply.

The Circuit Court passed a decree to the effect that the plaintiffs are entitled to the use of water from Cote Slough during the spring overflow; that as soon as that subsides and all the water is needed by defendants for irrigation, the latter are authorized to control the water and to use it upon their premises. The court reserved the right to appoint a competent and suitable individual to administer the decree, and also decreed that the plaintiffs and defendants have a joint right to the use of the ditch and dam in Cote Slough. The defendants appeal.                                        REVERSED.

For appellants there was a brief over the names of *Messrs. McCamant, Bronaugh & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief and an oral argument by *Mr. J. W. Biggs.*

BURNETT, J.—The predecessor of the defendants in title was W. B. Parker, who is a brother of Hattie May Tyler and brother-in-law of the other plaintiff, S. F. Tyler. Admittedly, Parker put his dam into Cote Slough and dug the first ditch before the Tylers appeared on the scene. The plaintiffs claim nothing

but the right to use the flood waters that come upon their premises. Parker was using these flood waters for irrigation purposes prior to the time the Tylers began to irrigate. This was accomplished in part by building small dikes or levees across the general course of the swales, so as to cause the water to spread over the ground. It appears clearly by the testimony that after Parker had plowed some further extensions of his ditch to his eastern boundary he gave the Tylers permission to scoop out the ditch for the purpose of more quickly conveying the flood waters to their land than it would come down by the swales. Parker is not disputed in his testimony that this was only to apply to the flood waters and that, so far as the water diverted from Cote Slough by means of the dam was concerned, he had a right to put into the connecting ditch such obstructions as would enable him to cause the water to spread out over his own land.

It thus appears that all the plaintiffs have is a right to use the surplus remaining after the lands of the defendants are irrigated, which flows on past those tracts to and upon the lands of the Tylers. The plaintiffs did not acquire any right whatever in the dam in Cote Slough, or to the ditch originally constructed by Parker, and all they secured in the connecting ditch was the right to have the flood waters flow through it. When they subsided and the coming of the water from Cote Slough depended upon the dam, the plaintiffs had no further right to any of the artificial means of diverting the water.

As taught in *Hill* v. *American Land & Livestock Co.,* 82 Or. 202 (161 Pac. 403), a lower appropriator has no right to compel one who has taken out water above him to maintain an excessive use of water so that the former may get the benefit of the surplus. This is

what the plaintiffs are plainly seeking to accomplish and what the decree of the Circuit Court allows them to do. The testimony of Tyler himself is that all he claims is the right to use the surplus flood waters after they have flowed upon his lands. What Parker gave him was evidently a mere license for his accommodation and conferred no privilege affecting anything more than the flood waters.

The testimony upon which the defendants claim damage for interference with their check dams is very meager and, in our judgment, not sufficient for us to form an intelligent estimate of the amount of damage. Upon consideration of the whole testimony and the record in the case, we are of the opinion that the Circuit Court was in error and that a decree should be rendered here, reversing that of the Circuit Court and declaring the defendants to be the owners of the dam in Cote Slough and the ditch leading therefrom and across their entire premises; and that they have a right to divert the water therefrom and cause it to spread over their grounds by means of such dikes and levees as may acomplish the purpose, provided, however, that they do not prevent the surplus flood water from flowing upon the lands of the plaintiffs; and also subject to the condition that during the flood season while the water overflows the banks of Cote Slough independent of the dam, the plaintiffs shall have the free use of the connecting ditch hereinbefore mentioned, for the conduct of flood waters upon their lands. The defendants are entitled to the costs and disbursements in this court, but neither party shall recover other costs or disbursements.        REVERSED.    DECREE RENDERED.

BEAN, BENSON and HARRIS, JJ., concur.