[No. 10144. Department One. August 5, 1912.]

JOHN L. THOMAS *et al., Respondents,* v. THEODORE W. SPENCER *et al., Appellants.*[1]

WATERS AND WATER COURSES—APPROPRIATION—RIGHT TO OBSTRUCT —DISSEIZIN—ADVERSE POSSESSION. The right to obstruct the outlet of a lake, acquired by appropriation in 1883, is lost by disseizin and adverse possession, where the dam was removed in 1892, and thereafter the shores of the lake were held in open, exclusive, notorious and adverse possession for more than ten years, and until a new dam was built in 1909, without any obstruction of the lake except by permission in 1907 for four months, and except that once each year during the rainy season, without the knowledge of the owners, a few stones and pieces of wood were thrown into the narrow out-

[1]Reported in 125 Pac. 361.

let of the lake (the work requiring about fifteen minutes) and removed in April or May thereafter.

Appeal from a judgment of the superior court for San Juan county, Joiner, J., entered June 27, 1911, upon findings in favor of the plaintiffs, in an action for an injunction. Affirmed.

*Hadley, Hadley & Abbott,* for appellants.
*Neterer & Pemberton,* for respondents.

Gose, J.—The litigation in this case arose out of the maintenance by the appellants of dams at the mouth of each of two small unmeandered lakes, hereafter called the upper and the lower lake. The lower dam is at the mouth of a small lagoon, an extension of the lower lake. The respondents' lands entirely surround the upper lake, and surround the lower lake except a small portion of its outlet. There is a flowing stream from the upper to the lower lake during the rainy season of the year, but no water flows therein during the summer months. A small stream of water flows from the lagoon to the appellants' sawmill. The purpose of the upper dam is to use the bed of the lake for a storage reservoir during the rainy season. In the summer season the flood water is released, thus permitting it to flow into the lower lake and lagoon as needed for the operation of the appellants' mill. The purpose of the lower dam is to raise the level of the water in the lower lake, to be diverted and used at the mill for power purposes. The maintenance of these dams operates to flood the bottom land owned by the respondents. The appellants assert the right to maintain each of these dams at their present level, contending that their predecessors in title built the dams and the mill, and appropriated the water for power purposes in 1883 or 1884, when all the land surrounding the lakes was public land of the United States, and that they have since used the water by a gravity flow for power purposes.

The court found that the upper dam was entirely removed in 1892 or 1893; that in the winter season of each year since its removal the appellants have thrown into the bottom of the outlet of the lake some pieces of wood and rock to a height of twelve to twenty inches, thereby raising the water of the lake to a like height; that such work would require from fifteen minutes to a half hour; that they would remove the obstruction in April or May of each year; and that neither the respondents nor their predecessors in title knew of this obstruction. The court also found that the mouth of the lake was otherwise unobstructed after the removal of the dam in 1892 or 1893, until the construction of the present dam in November, 1909, except that a dam was maintained by the appellants' lessees for about four months in 1907, in accordance with an agreement between them and the respondents. The court also found, both as a matter of fact and law, that the respondents had been in the open, exclusive, notorious, and adverse possession of the upper lake and its outlet, and the land through which the outlet flows, and the land bordering upon the lake, for more than twelve years prior to the commencement of the action. The present dam was constructed in November, 1909, and the action was commenced in March, 1910. The court found further that, in the fall of 1907, the appellants without right raised the lower dam six inches higher than it had theretofore been maintained, thereby raising the water in the lagoon and lake to a corresponding level, and flooding the respondents' land. A decree was entered which provides that a mandatory injunction shall issue, requiring the appellants to remove six inches from the top of the lower dam, and requiring them to remove the upper dam so as to restore the outlet of the lake to its natural condition. This appeal followed.

The findings are amply supported by the evidence. Indeed, we think that the court might have gone farther and found from the evidence that, from 1892 to 1909, there had been no obstruction at the outlet of the upper lake, except

for a short time in 1907, when the respondents consented to
a temporary interruption of the natural flow of the water
at that point. Assuming that the appellants' predecessors
in title acquired the right to obstruct the outlet of the lake
by a prior appropriation, and that this right passed to the
appellants as they contend, we are of the opinion that the
right has been lost by disseizin and by the adverse possession
of the respondents and their grantors for the statutory
period. The court rightfully found that the respondents
and their predecessors in title had been in the open, exclu-
sive, notorious, and adverse possession of the shores of the
upper lake and its outlet for more than ten years when the
dam was constructed in 1909. The mere fact that the ap-
pellants once each year in the rainy season, without the
knowledge of the respondents or their grantors—and they
admit that they had no knowledge thereof—threw a few
pieces of wood and a few stones into the narrow bed of the
outlet of the lake, and removed them in April or May there-
after, did not interrupt the running of the statute. The
removal of the dam in 1892 operated as a dispossession of
the appellants, and a reentry to be effective had to be of
such a character as to impart notice to those asserting a
hostile right.

"When a party is once dispossessed it is not every entry
upon the premises without permission that would disturb
the adverse possession. He may tread upon his own soil,
and still be as much out of possession of it there as else-
where. An entry, to defeat a subsisting actual possession,
must be with the actual intention of taking possession.

"This intention must be sufficiently indicated by words or
acts, by express declaration, or by exercise of acts of owner-
ship inconsistent with a subordinate character. Occasional
or temporary intrusions upon the land will not be sufficient
to interrupt the running of the statute. The acts should be
open and notorious, and continue unbroken for a sufficient
time to give notice to the person interested that a claim of
right is intended by them." 1 Cyc. pp. 1010, 1011, subds.
b and c.

See, also, *Moore v. Brownfield,* 7 Wash. 23, 34 Pac. 199.

The record is barren of evidence of such a reentry. The decree is affirmed.

CHADWICK, PARKER, and CROW, JJ., concur.