Argued at Pendleton October 30, reversed and remanded December 24, 1918, sustained on petition for rehearing February 4, 1919.

## BESSLER v. POWDER RIVER GOLD DREDGING CO.*

### (176 Pac. 791.)

**Judgment—Res Judicata—Identity of Issues—Adverse Possession.**

1. Decree, in suit to quiet title, that suit be dismissed because plaintiff had neither established a valid contract of sale to his predecessors nor adverse possession for 10 years, *held* no bar to plaintiff's subsequent action for possession based on subsequently acquired title by adverse possession.

**Pleading—Motion to Strike—Admission of Allegations.**

2. Motion to strike paragraphs of plaintiff's reply admitted the truth of their allegations for purpose of determining whether the motion was properly granted.

**Adverse Possession—Interruption—Adverse Decree.**

3. Decree dismissing plaintiff's prior suit to quiet title and awarding no affirmative relief did not interrupt his possession of the land to prevent ripening of his title by adverse possession, to be enforced in a subsequent action.

### ON PETITION FOR REHEARING.

**Adverse Possession — Continuity of Possession — Recognition of Adverse Title.**

4. If, at any time prior to expiration of the period of adverse possession, the one in possession recognizes the title which he seeks to defeat by his hostile holding, it operates to break the continuity which is one of the essentials of adverse possession.

**Adverse Possession—Continuity of Possession—Judgment Awarding Possession.**

5. Judgment, in action to quiet title, adjudicating possession of land and awarding it to one of the parties, is insufficient to interrupt running of statute; actual delivery of possession being necessary.

[As to requisites and necessity of continuity of possession, see note in 13 Am. Dec. 185.]

From Baker: Gustav Anderson, Judge.

In Banc.

On July 14, 1915, the plaintiff herein began a suit to quiet title to a small tract of land then used by him as the site of a slaughter-house, in connection with his

---

*For a discussion of the question of unbroken continuity as essential elements of adverse possession, see note in 15 L. R. A. (N. S.) 1202.
Reporter.

business in conducting a meat market. The defendant, herein was a defendant in that suit. The complaint was based upon allegations to the effect that in 1904, plaintiff's predecessors in interest had entered into a contract with the holders of the legal title, for the purchase of the land, the payments therefor to be made in monthly installments; that all of the installments had been fully paid, and that a deed had been demanded and refused. It was also alleged that plaintiff and his grantors had been in the actual, adverse possession of the premises for more than ten years prior to the commencement of the suit. The relief sought was a decree compelling a conveyance and quieting plaintiff's title.

The defendants, in that suit, answered denying the material allegations of the complaint, and alleging ownership in the defendant Derby. The prayer of this answer is not in the record, and we are unable to say whether or not the defendant asked for any affirmative relief, but the pleading otherwise concludes thus:

"That by reason of the facts above alleged, the court has no jurisdiction of this cause."

A trial being had, the court made and entered a decree in this language:

"At this time, the fifteenth day of January, 1916, the above-entitled cause comes on for hearing, plaintiff, appearing by his attorneys, John L. Rand and A. A. Smith, and defendant R. W. Derby appearing by his attorneys, Clifford & Correll, and defendants Hewitt Land Co. and Sumpter Lumber Co. appearing by their attorney, Leon W. Behrman; and the court having made and filed its findings of fact and conclusions of law, it is now, by virtue of the law and the findings aforesaid,

"CONSIDERED, ORDERED AND DECREED: That plaintiff takes nothing by his complaint, and that said suit be, and the same hereby is, dismissed. It is further

"CONSIDERED, ORDERED AND DECREED: That neither plaintiff nor defendant Sumpter Lumber Co. recovers costs or disbursements of the other; and that defendant, R. W. Derby have and recover of and from defendant Sumpter Lumber Co. his costs and disbursements herein, taxed and allowed at $——; and that defendant Hewitt Land Co. have and recover of and from defendant Sumpter Lumber Co. its costs and disbursements herein, taxed and allowed at $——, and that execution issue therefor."

Plaintiff appealed from this decree, which was subsequently affirmed by this court: *Bessler* v. *Derby*, 80 Or. 513 (157 Pac. 791).

Thereafter, on October 27, 1916, plaintiff began this action, wherein the complaint is in the usual form for the recovery of possession of real property, and describes the identical land which was in controversy in the equitable proceeding above referred to. To this complaint the defendant filed an answer which, *inter alia*, pleaded the proceedings and decree in the former suit, by way of estoppel. Plaintiff's reply thereto contains the following paragraphs:

"That in the trial of the said suit in equity the testimony developed the fact, and it was established as a fact from the testimony of the witnesses on behalf of the plaintiff and of the defendant in said suit, that the contract mentioned and described in plaintiff's complaint in said suit required the predecessors in interest and grantors of the plaintiff to make certain payments and that the last payment required to be made under said contract was to be made and was made in March, 1906; and under said proof the lower court found, and the Supreme Court of the State of Oregon affirmed the same, that the possession of plaintiff and his grantors and predecessors in interest of the said

premises did not become adverse or hostile to the defendants until March, 1906, and that the possession of the plaintiff and of his predecessors in interest and grantors up to March, 1906, was permissive, and that said suit having been commenced in July, 1915, the possession of the plaintiff of the said premises had not ripened into title at the time of the commencement of the suit, and that therefore the said suit, in so far as the question of adverse possession was concerned, had been prematurely brought, and that title to the property upon the ground of adverse possession had not been and could not have ripened in the plaintiff at the time the said suit was commenced.

"That after the commencement of said suit and during the continuation thereof and after the same had been fully determined upon the appeal the plaintiff still remained in the adverse, open, hostile, notorious and continuous possession of the said premises and the whole thereof until long after the full period of ten years from and after March, 1906, had expired, and plaintiff thereby became and still is the owner in fee of the said premises and the whole thereof, as alleged in plaintiff's complaint."

The defendant moved to strike these paragraphs from the reply upon the ground that they "are sham, frivolous, redundant, irrelevant and immaterial." This motion being allowed, plaintiff declined to plead further, and a judgment was entered dismissing the action, and plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. A. A. Smith* and *Mr. John L. Rand,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the name of *Messrs. Clifford & Correll,* with an oral argument by *Mr. Morton D. Clifford.*

BENSON, J.—1, 2. This appeal presents but one serious question for our consideration, and that is this: Does the decree in the suit constitute a bar to plaintiff's claim of ownership based upon adverse possession? We think not. The decree does not undertake to determine where the title lies, and gives no indication as to whether plaintiff failed to establish his ownership under the contract of purchase, or whether he failed to establish his adverse holding of the premises for a period of ten years. The opinion of this court, in *Bessler* v. *Derby,* 80 Or. 513 (157 Pac. 791), holds that plaintiff had failed to establish a valid contract for the purpose of the land, and in reference to his claim of adverse possession, says:

"It is true that the plaintiff alleges that his claim of title has been ripened by adverse possession; but, even though it be assumed that the possession has at any time been adverse, the testimony fails to show that such adverse possession has continued for the requisite period of time."

It seems clear, therefore, that upon a *de novo* trial in this court it was held that the plaintiff's suit should be dismissed because he had neither established a valid contract of sale, nor that he had held adverse possession of the land for a period of ten years. We are called upon, then, to say whether or not such a decree will bar a subsequent action for possession, based upon a subsequently acquired title by adverse possession. That the decree in the former suit is conclusive upon every issue that was then litigated or could have been determined at that time, is beyond controversy. But, accepting as true, as we must, for the purposes of this discussion, the allegations of plaintiff's reply which were stricken out, it is clear that they do not

call for the same evidence in their support as that
which was submitted in the prior suit; indeed the evi-
dence could not be the same, since it is now conceded
that the former proceeding was prematurely com-
menced, and it is urged that what was then no title at
all, has now matured into a right which plaintiff is
justified in maintaining. It amounts, in effect, to the
assertion of a title acquired after the rendition of the
decree in the equitable proceeding relied upon by de-
fendant. In *Barrows* v. *Kindred,* 4 Wall. 399 (18
L. Ed. 383), plaintiff brought an action of ejectment
wherein he exhibited a chain of title consisting of a
patent from the United States to Whitney, a deed
from Whitney to Vose, the will of Vose, and a deed
from his executors to plaintiff, dated March 18, 1861.
The defendant gave in evidence the record of a judg-
ment relating to the same premises, wherein Barrows
was plaintiff and one Gordon was defendant, the judg-
ment being in favor of Gordon. This prior suit was
ended June 5, 1859. It appears from the record that
the former action of ejectment had gone against plain-
tiff because Vose's executors, having the power to sell,
had without authority of law, delegated that power to
an attorney. Thereafter the executors themselves
executed a sufficient conveyance to plaintiff, upon
which he now relies. In the opinion, Mr. Justice
SWAYNE says:

"Upon the trial of the case of *Barrows* v. *Gordon*
the power of attorney from the executors and the deed
executed by Kingsley were properly ruled out as void.
They were not in the case. Barrows had no title to
the premises in controversy, and judgment was given
against him. This may be admitted to be conclusive
as to his want of title at that time, and whether the
decision of the court as to the power of attorney and
the deed under it was erroneous or not, it would have

been a bar to another action attempted to be maintained upon the same state of facts. But this did not deprive Barrows of the right to acquire a new and distinct title; and, having done so, he has the same right to assert it, without prejudice from the former suit, which would have accompanied the title into the hands of a stranger.''

The doctrine thus announced, finds support in many cases among which are, *Taylor* v. *M'Crackin,* 2 Blackf. (Ind.) 260; *Richey* v. *Bues,* 31 Utah, 262 (87 Pac. 903); *University* v. *Maultsby,* 55 N. C. 241; *Kenealy* v. *Glos,* 241 Ill. 15 (89 N. E. 289); *Woodbridge* v. *Banning,* 14 Ohio St. 328; *Quackenbush* v. *Ehle,* 5 Barb. (N. Y.) 469.

3. We conclude, therefore, that it was error to strike out plaintiff's reply, unless we determine that the suit in equity had the effect of interrupting the continuity of plaintiff's alleged adverse possession. Under the modern practice, the action of ejectment is not only employed to recover the possession of lands, but also, almost exclusively, for the trial of title to real property, and as a result, practically all of the adjudicated cases which bear upon the question now under consideration are of that class. In *Barrell* v. *Title Guarantee Co.,* 27 Or. 77 (39 Pac. 992), in a discussion of this subject, Mr. Justice WOLVERTON, speaking for the court, cites with approval *Mabary* v. *Dollarhide,* 98 Mo. 204 (11 S. W. 611, 14 Am. St. Rep. 639), quoting as follows:

''We cannot see how the mere recovery of a judgment in an action of ejectment can suspend the running of the statute of limitations. To have that effect there must be possession under it, or something done to make the defendant's possession subordinate to the plaintiff's title.''

This quotation is then followed by this statement:

"We have been cited to but one authority which holds that a mere judgment in ejectment will stop the running of the statute of limitations: *Brolaskey* v. *Mc-Clain,* 61 Pa. St. 166; so that upon authority we cannot say that the Tilton judgment alone is sufficient to break the continuity of the adverse possession of plaintiff."

The great weight of authority is to the effect that to produce such a result the judgment must be made effectual by the execution of a writ of possession: 1 R. C. L. 725; 2 C. J. 109. It is true that the prior proceeding in the present instance was a suit in equity, but since the modern action of ejectment is just as dignified a proceeding in determining the rights of property as a suit to quiet title, there is no good reason for differentiating the effects of the two. In fact, we find nothing in the authorities justifying such a conclusion. The most that is said in any of the text-books is, that if a decree requires the occupant to convey the land, it operates as a voluntary conveyance, and thereby destroys the continuity of the possession; or if the decree finds that he has no interest in the land, directs him to surrender possession and enjoins him from asserting any title, that it will stop the running of the statute: 2 C. J. 110; 1 R. C. L. 725. In the case at bar, it happens that the prior decree goes no further than to dismiss the suit. It awards no affirmative relief of any sort, and we cannot say that such a decree interrupted plaintiff's possession.

It follows that the judgment must be reversed, and the cause will be remanded for further proceedings not inconsistent herewith.     REVERSED AND REMANDED.

HARRIS, J., not sitting.

Former opinion sustained February 4, 1919.

PETITION FOR REHEARING.

(178 Pac. 237.)

*Messrs. Clifford & Correll,* for the motion.

*Mr. John L. Rand* and *Mr. A. A. Smith, contra.*

In Banc.

BURNETT, J.—It will be recalled that the plaintiff began an action for the recovery of the possession of real property, stating that he is the owner in fee and entitled to the immediate possession of the tract, described by metes and bounds, and claimed damages for its detention. The defendant, without asserting any title in itself, denied the complaint as thus outlined. It further sets up the pleadings in which the plaintiff here sought to quiet his title as against the defendant and its grantee, wherein the defendants there defended and one of them in that suit asserted that he was then the owner in fee and in possession of the property, all of which affirmative matter alleged in the answer in that suit was denied by the reply there. The answer here shows the conclusion of that suit to have been that the plaintiff there take nothing by his complaint and that his suit be dismissed. After some denials, the plaintiff replied, as stated in the former opinion, to the effect that in the suit to quiet title it appeared that at that time the plaintiff had not been in adverse possession of the premises for a full 10-year period and that after the conclusion of that suit and the judgment therein plaintiff continued in adverse

possession, until taken altogether he and his predecessors in interest had been in possession for a full period of ten years, and hence that he was the owner in fee simple of the land. This new matter was stricken out. Assigning this as error, the plaintiff appealed and the judgment was reversed by an opinion of Mr. Justice Benson.

4. The petition for rehearing urges upon us that the suit to quiet title constituted an interruption of the continuity of the adverse possession upon which the plaintiff counts as giving him the title in fee simple, under such cases as *Caufield* v. *Clark*, 17 Or. 473 (21 Pac. 443, 11 Am. St. Rep. 845), and others following it as a precedent. It is true that if, at any time prior to the expiration of the period of ten years of adverse possession, the one in possession shall recognize the title which he seeks to defeat by his hostile holding, it operates to break the continuity which is one of the essentials of adverse possession. The question presented is whether the suit to quiet title is such a recognition of, or, in other words, a *quasi* attornment to, the title which the one in adverse possession seeks to defeat. The present contention of the defendant is based almost entirely upon the following language of the late Mr. Justice Moore in *Crow* v. *Abraham*, 86 Or. 99 (167 Pac. 590):

"In a note to the case of *Welner* v. *Stearns* (Utah), Ann. Cas. 1914C, 1175, 1182, it is said: 'If a claimant in the adverse possession of land brings an action involving the title thereto which is based on the existence of a right in another, it is such a recognition of that right as will arrest the running of the statute of limitations in favor of the occupant and against such right.' The alleged adverse right of Henry G. Crow having been thus arrested by the institution of his former suit, such claim could not be continued, but a

new right by adverse possession might have been inaugurated after the final determination of that suit. But however this may be, ten additional years not having elapsed from such decision until the commencement of this action no error was committed in this respect."

: The former suit alluded to was that of *Crow* v. *Crow*, 70 Or. 534 (139 Pac. 854), in which Henry Crow sued his brother, E. J. Crow, alleging in substance that at a previous date the plaintiff Henry had conveyed his land to the defendant E. J. but had remained in possession of it all the time and that E. J. Crow only held it in trust for Henry, and the effort of his suit was to have the trust declared and to compel a reconveyance, the purposes of the trust having been accomplished. In *Crow* v. *Abraham* the widow and administratrix of E. J. Crow, who had died since the former suit, instituted an action against Abraham both as the executor of the will of Henry Crow and as an individual, to recover the rents, issues and profits of the lands there involved. Abraham defended as executor on the ground that his decedent had been in exclusive possession of the property for some twenty years and had conveyed an undivided interest to him as an individual, with a right to retain the rents, issues and profits in their entirety after a certain date. Mr. Justice MOORE held that a suit to declare a trust interrupted the adverse possession so that it could not be urged again in the action to recover from Abraham as executor, but that Abraham as an individual should be allowed to give evidence of the adverse possession respecting his individual share notwithstanding the effect of *Crow* v. *Crow* on the case of his decedent, because the individual was not included or bound by the former judgment. The earlier litigation, to which Mr.

90 Or.—43

Justice MOORE alluded, is different from this case.
There, Henry Crow said to the court in substance:

"I conveyed a title to the defendant, E. J. Crow,
which he still holds. Recognizing that title, however,
I now contend that it was conveyed to him in trust
for me and I pray that the trust be declared, and, it
having been worked out to completion, that the defend-
ant be compelled to return to me the property the title
to which he obtained from me."

That was in effect a clear confession of a title rest-
ing in another party and coming within the language
quoted by Mr. Justice MOORE from the note to *Welner*
v. *Stearns,* in that it is "based on the existence of a
right in another." Here the cases diverge in their
circumstances. The plaintiff in this instance initiated
an adverse possession. He claimed title to the land
to be in himself as successor of former possessors,
which he might under the doctrine of *Vance* v. *Wood,*
22 Or. 77 (29 Pac. 73), and later cases. As the
phrase goes, he kept his flag flying until 1915, about
nine years after the beginning of his adverse holding.
Instead of recognizing title in the defendant or any of
its grantees, he then brought the suit to quiet title in
defense of his own estate. He did not acknowledge
their title. He said in effect:

"These parties claim some interest in my land,
but it is without validity and is utterly void. I de-
mand that their baseless assertions of ownership be
silenced."

In *Welner* v. *Stearns,* 40 Utah, 185 (120 Pac. 490,
Ann. Cas. 1914C, 1175), the question was whether a
suit to quiet title was the recognition of an adverse
title. It seems that the plaintiff had come into pos-
session of some realty which the county authorities
had bid in at a tax sale, and had ultimately received

a deed for the same. The original owner was one Almanda Stearns and the defendants in the suit claimed under her. The court there, speaking by Mr. Justice FRICK, said:

"What was the legal effect of the pendency of the action that appellant commenced in November, 1903, to quiet the title to the lots in question in himself? Counsel for Borg (a defendant), strenuously insists that in commencing the action appellant arrested the running of the statute in his favor. There can be no doubt that if Almanda Stearns or her grantee had commenced an action against appellant in 1903, or at any other time before seven full years had elapsed from the time he took possession of the lots in question, under the circumstances stated, the running of the statute would have been arrested. By the bringing of an action to recover the property, the adverse claimant of the title, no doubt, would have effectively disputed the title or ownership of the one in possession, and thus the running of the statute would be arrested in favor of the one in possession. Is it not pertinent to ask, however: In what way was appellant's claim of ownership disputed or questioned when he commenced the action in November, 1903? Borg's counsel, at the hearing of this case, argued that, because appellant in his complaint to quiet the title to the lots had alleged that Almanda Stearns claimed some estate or right in or to the same, therefore he admitted her title. Counsel overlooks the important fact that by what appellant pleaded he did not admit that Almanda Stearns had any claim or interest in fact, but he merely alleged that she claimed to have an estate or right or interest in the lots. Appellant, however, immediately after making the foregoing statements, also alleged that her claim was baseless and without right. How can it successfully be claimed that in view of these allegations appellant conceded or admitted any outstanding title, estate, right or interest in anyone? If counsel's contentions are sound, then no claimant who commences an action to determine ad-

verse claims can state a cause of action under Section 3511, *supra* (being substantially like the Oregon statute for quieting title). It is certainly indisputable that in order to invoke the aid of the court appellant had to allege that someone claimed title or some interest or estate in the lots adverse to him. If there was no one asserting any title or interest adverse to appellant, why bring an action? It is clear that by what appellant alleged he did not admit or concede any estate or right in the former owner of the title, or in anyone else."

The situation before us, then, is that notwithstanding the decree of the Circuit Court, affirmed by this court, dismissing this plaintiff's suit to quiet title, he still remains in the actual possession of the estate, according to his narration, which clearly would be an adverse holding. He is saying in effect:

"Notwithstanding all your claims and all your decrees I am still here in possession and have been now for more than ten years, claiming openly, notoriously and exclusively a title adverse to you and to all others, whereby I have become the owner in fee simple of this land, based upon which I have brought ejectment against you."

It is difficult to conceive how the present defendants, defendants also in the suit to quiet title, could have ousted the plaintiff from the possession of the land by virtue of the decree dismissing his suit to quiet title. The effect of the decision there was simply to leave him where it found him.

The rule is thus stated in 2 C. J., page 109:

"According to the weight of authority, the mere recovery of a judgment in ejectment will not in itself stop the running of the statute of limitations. There must be an actual change of possession by virtue of such judgment, and where plaintiff in ejectment neglects to enforce his judgment within the period laid in

his demise, his right of entry under that judgment can only give a right to enter during the continuance of the demise laid in the declaration for which the judgment was rendered, and after the demise has expired the right to enter upon the land in virtue of the judgment no longer exists.''

5. The former decree did not undertake to do anything about the possession. It did not in terms give the possession to one or the other. The case, therefore, is not so strong as where the judgment has been rendered directly adjudicating the possession of the land and awarding it to one or the other. Yet in that case, as the text cited shows, there must be an actual delivery of possession and not a mere judgment for the same, to interrupt the running of the statute.

We adhere to the former opinion.

REHEARING DENIED.