Argued May 4; affirmed May 26; rehearing denied
September 22, 1931

EBELL ET AL. *v.* CITY OF BAKER

(299 P. 313)

*William Smith,* of Baker (Blaine Hallock, of Baker, on the brief), for appellant.

*Geo. T. Cochran,* of La Grande (Cochran & Eberhard, of La Grande, and F. C. McColloch, of Baker, on the brief), for respondents.

BEAN, C. J. The grounds upon which plaintiffs rely are shown to quite an extent in paragraph V of the complaint, which reads as follows:

"That more than sixty years ago plaintiff's predecessor in interest went upon said Goodrich creek for the purpose of appropriating water and by means of

dams, ditches and works, diverted and appropriated and for more than sixty years immediately prior to the month of August, 1929, plaintiffs and their said predecessor in interest had annually, openly, notoriously, adversely, continuously and without interruption and under a claim of right diverted for irrigation, stock and domestic uses from said Goodrich creek and conveyed the same through and by means of certain ditches and other artificial conduits belonging to plaintiffs and applied the same to the irrigation of two hundred nineteen and five-tenths acres of the lands hereinbefore particularly described, by means of which the said lands have been beneficially irrigated each and every year, and plaintiffs have been enabled, solely by the use of said waters as aforesaid, to grow thereon each and every year during the said period of time prior to August, 1929, large and valuable crops of grain, hay, fruits, vegetables, herbs and grasses and have also used the same for livestock and domestic purposes; and said plaintiffs and their predecessor in interest, relying upon the use of said water upon said lands, have greatly developed and improved said lands by cultivation and by the construction of permanent fencing, buildings and other structures thereon.''

Plaintiffs further allege that during July, August and September of each year Goodrich creek becomes low and the flow of water is diminished in volume to an amount less than sufficient to supply plaintiffs' demands, appropriation and diversion for stock, domestic and irrigation purposes; that about August 15, 1929, at a time when plaintiffs required said water for such purposes and when there was insufficient water flowing in Goodrich creek to supply the plaintiffs' rights, the defendant city of Baker, unlawfully and without right thereto, against the will and without notice to plaintiffs, took and diverted all of the waters of Goodrich creek then flowing therein, and carried the same away for the purpose of selling the waters

to the inhabitants of the city of Baker at a profit, thereby depriving plaintiffs' lands of stock, domestic and irrigation water, to the injury and damage of plaintiffs' lands and the crops growing thereon in the sum of $2,500.

The defendant answered by denying any trespass or injury, and further pleaded a former adjudication to the whole matter in the determination of the relative rights to the use of the waters of Powder river and its tributaries, in the circuit court for Baker county, which proceedings were initiated about May, 1909, and the decree was duly entered therein on March 18, 1918, whereby plaintiffs were duly given and awarded the following priorities to the use of the waters of Goodrich creek upon their lands, as follows: a date of relative priority of 1863 for 35 acres; a date of 1865 for 64 acres; a date of 1880 for 80 acres; a date of 1881 for 55 acres. The defendant further alleges that under and by virtue of the terms of said decree the defendant city of Baker was duly given and awarded the following priorities in and to the use of the waters of said Goodrich creek for its municipal use, to wit: five second-feet with a date of relative priority of 1862, and six and a quarter second-feet with a date of 1868. In the final decree of the circuit court it was found as follows:

"That said city of Baker has, since the purchase of said water rights, always used a part of said water; that all of the parties using water from said streams have at all times recognized the rights of the city of Baker as being prior to any of the said water users, and all the improvements on all of their said farm lands have been made under conditions created by such recognition in such rights."

The city of Baker alleges that it purchased such rights about the year 1901, as the circuit court found;

that the plaintiffs and their successors in interest are forever estopped by said judgment and decree to claim or assert that any appropriation appurtenant to their lands is prior in time to the appropriation of defendant in Goodrich creek of five second-feet made in 1862, and to deny the priority of appropriation of defendant over any of plaintiffs' appropriations, or to claim or assert that on or prior to March 18, 1918, any of plaintiffs' appropriation is superior in right to the appropriation of said five second-feet by defendant in 1862.

Plaintiffs filed a reply denying the allegations of defendant's further and separate answer, except as alleged by plaintiffs, and further averred that at all times between the 18th of March, 1918, and on or about the 20th of August, 1929, prior to the commencement of this suit, plaintiffs and their predecessor in interest, George Ebell, used the waters of Goodrich creek for the irrigation of the lands described in plaintiffs' complaint during the entire irrigation season of each year, being from the first of April to the first of October; that in 1917 the defendant constructed its works in Goodrich creek for the purpose of utilization of the waters of Goodrich creek for municipal purposes, and had need of said waters of Goodrich creek for municipal purposes; and that said use by the plaintiffs deprived defendant of the use of said waters and has at all times been prior in time and superior in right to the use and rights of defendant and has at all times been open, visible, notorious, exclusive and made by plaintiffs under a claim of right, and hostile and adverse to all the world, particularly to the defendant. Plaintiffs further aver that in 1863 the predecessor in interest of George Ebell made a valid appropriation of the waters of Goodrich creek, for the irrigation of

plaintiffs' lands; that George Ebell succeeded to said lands about the year 1865, and thereafter completed the appropriation of the water and the irrigation of the land; that the predecessor in interest of the defendant, to wit, Nelson Mining Company, a corporation, owned the Auburn canal and used certain water out of Goodrich creek for placer mining purposes until about 1901; that the plaintiffs and their predecessors in interest used and claimed said rights as prior in time and superior in right to said water rights so utilized through said Auburn canal by defendant and its predecessor in interest. The plaintiffs aver in detail that in the enforcement of said rights, George Ebell, about May 25, 1888, commenced a suit in the circuit court for Baker county against the Nelson Mining Company, whereby George Ebell claimed to be the owner of the right to the use of the waters of Goodrich creek for irrigation of his lands, prior in time and superior in right to any right to the use of the waters of the creek by the Nelson Mining Company to the extent of eighty miner's inches, equivalent to two cubic feet per second, and prayed that defendant be restrained from diverting the waters of Goodrich creek to that extent.

Plaintiffs further aver that an injunction order was issued by the circuit court restraining the Nelson Mining Company from interfering with said 80 inches of water from Goodrich creek, and thereafter the cause was transferred to the circuit court of the United States for the district of Oregon; that thereafter proceedings were had whereby the Nelson Mining Company sought to have said restraining order set aside and vacated; that said motion was duly heard by the court, and on July 2, 1888, the Hon. Matthew P. Deady, Judge of the United States Circuit Court, duly made and entered an order in the said court and cause deny-

ing said motion; that the restraining order was continued in full force and effect until October 19, 1891, when the cause was dismissed by stipulation of the parties; that at all times since, and until defendant city of Baker purchased said Auburn canal and water rights of said Nelson Mining Company from Goodrich creek, such waters were used in accordance with said restraining order by the distribution of said water, first to said George Ebell to the full extent of his rights, and thereafter to the predecessor in interest of defendant, all without any protest, claim or demand for priorities by said predecessor in interest of defendant, and after the purchase of said Auburn canal and water rights by the city, the distribution of said water was continued in the same manner until the year 1917; that plaintiff Frank Ebell farmed the lands and irrigated the same from Goodrich creek accordingly; that in 1917 the defendant constructed and thereafter maintained and operated control gates, intakes, diversion boxes and measuring devices, for the diversion of the waters of Goodrich creek, and their division between the plaintiffs and defendant, with the result and intent that the waters of Goodrich creek should first be used for the irrigation of the lands described in plaintiff's complaint, prior to the supply of any water to defendant; that thereafter and from 1917 until about the 20th of August, 1929, said defendant, through said measuring device and diversion works, diverted said waters of Goodrich creek, first, to the plaintiffs herein for use upon the lands described in plaintiff's complaint, and, second, to the defendant herein, and said distribution was so made during all of said time in the same manner and to the same extent as said distribution had been carried on from and after the date of said restraining

order in the suit against the Nelson Mining Company; that at all times since 1917 the defendant needed and could have used such waters for municipal purposes, and the use of said water by plaintiffs and their predecessor in interest deprived said defendant of said water. Plaintiffs further aver, in substance, that thereafter, relying upon the proper distribution of water, plaintiffs purchased 160 acres of land, which land is described in plaintiff's complaint, at a price of $16,000, which defendant knew, and set forth the necessity for irrigating plaintiff's land. Plaintiffs also aver that in the decree of March 18, 1918, the rights of the city of Baker were described in paragraph 15 of said decree, decreeing to the city of Baker

"all the right, title and interest of the predecessors in interest of said defendant in and to the Auburn canal and the right to the use of the waters of Goodrich creek therein for placer mining purposes, and further decreed that said right to the use of water had been changed from use for placer mining purposes to use for municipal purposes, and said change was in said decree duly ratified and confirmed;"

and assert that such a decree does not determine, nor was there adjudicated in said proceeding, the time or season during each year in which the use of water from Goodrich creek might be made by the defendant herein, and that the time said water was used for placer mining purposes by the mining company was from the time in the spring of each year, when the waters flowing in the creek were greater than the amount required to supply the rights of the predecessor in interest of these plaintiffs to the use of water for irrigation, until such time when the flow of water in Goodrich creek became less than sufficient to supply the predecessor in interest of plaintiffs with water

for the irrigation of his lands; that no conflict of rights between the plaintiffs or their predecessor in interest and the defendant appeared in said proceedings, wherein the decree was entered, and that "the long-established practice in the distribution of said waters of said Goodrich creek, between the parties, has determined, defined and construed the rights of the parties hereto to the effect that the rights of the plaintiffs are prior in time and superior in right to the rights of the defendant."

The defendant raises the question of the relative rights of the parties by several motions to strike out the different, further and separate replies of the plaintiffs or parts thereof, and a motion for nonsuit at the close of plaintiffs' testimony and a motion to dismiss the complaint, at the close of the case, which motions were denied by the court and which rulings defendant assigns as error.

We think the questions raised can be covered by consideration of the respective rights of the parties. Noticing first the matter of res adjudicata pleaded by defendant, unquestionably the determination of the state engineer, which was confirmed by the court, as provided by statute in the adjudication of water rights, "shall be conclusive as to all prior rights and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination": § 47-619, Oregon Code 1930.

■ It is almost the universal rule that a fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons

in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon either the same or a different cause of action: 34 C. J. 868, § 1282, citing ten Oregon cases and about five hundred others. We take the decree of March 18, 1918, as a verity and as determining the rights of the parties, as defined therein at the date of such decree.

■ As we view it, the record of the order, denying the dissolution of the injunction order in the federal court, is not res adjudicata of the rights of the parties, but shows that the plaintiffs and their predecessors were at that time asserting their rights, and fixes a rule by which their rights were thereafter, by common consent, adjusted for the distribution of water.

As an answer to the claim of defendant that the rights of the parties have been adjudicated, the plaintiffs assert, in effect, that by reason of the adverse use of the waters by plaintiffs for more than 10 years since the rendition of the decree of March 18, 1918, it has ripened into a prescriptive right; in other words, that the statute of limitations has run against the claim of defendant since that decree. Upon this question counsel for defendant contends that plaintiffs cannot assert an adverse possession after the decree of March 18, 1918, without bringing express notice to the defendant that they were claiming adversely; that without such notice the length of time intervening between the decree and the institution of the present suit would give them no better right than they previously possessed, citing *Root v. Woolworth,* 150 U. S. 401 (14 S. Ct. 136, 37 L. Ed. 1123). To this, counsel for plaintiffs reply, in effect, that in a suit to quiet title to

water rights, as in actions in ejectment or suits to quiet title to other classes of property, the mere entry of the decree is not effective to stop the running of the statute as against the person in possession, unless the successful litigant himself takes possession; or, in other words, the mere entry of a decree without an "actual delivery of possession" is not sufficient to interrupt the running of the statute, citing *Bessler v. Powder River, etc., Co.,* 90 Or. 663, 677 (176 P. 791, 178 P. 237).

*Barrell v. Title Guarantee Company,* 27 Or. 77 (39 P. 992), is a well-considered case. The opinion was written by Mr. Justice WOLVERTON and discusses the question relating to the commencement of an action as affecting the running of the statute of limitations, and an unsuccessful suit, and also a judgment under which possession is taken, commencing at page 87 of the report, quoting from *Mabary v. Dollarhide,* 98 Mo. 204, (11 S. W. 611, 14 Am. St. Rep. 639), where the court said:

"We can not see how the mere recovery of a judgment in an action of ejectment can suspend the running of the statute of limitations. To have that effect there must be possession under it, or something done to make the defendant's possession subordinate to the plaintiff's title." Citing other authorities.

On page 89 of the same report, we read as follows:

"But an unsuccessful suit, leading to no change of possession, does not stop the running of the statute." Citing *Moore v. Greene,* 60 U. S. (19 How.) 71, and other authorities. "Upon the other hand, however, where judgment has been obtained, and a transfer of possession thereunder follows through the process of the court, the continuity of the running of the statute is broken as of the date of the commencement of the action."

Also quoting from the case of *Carpenter v. Natoma Mining Co.,* 63 Cal. 616, at page 91 of the report [27 Or.], as follows:

"But the judgment does not create a new estate, or vest a new title, in the plaintiff, which interrupts the running of the statute of limitations, in case the same has begun to run. The running of the limitation can be interrupted only by an actual entry."

 The decree of March 18, 1918, did not toll the statute of limitations because it was not followed by taking of possession or by the use of the water by the city of Baker, the successful party, until 1929, more than ten years later. See 2 C. J. 109, § 168, where the rule is laid down as follows:

"According to the weight of authority the mere recovery of a judgment in ejectment will not of itself stop the running of the statute of limitations. There must be an actual change of possession by virtue of such judgment, * * *."

In *Bessler v. Powder River, etc., Co.,* supra, at p. 670 of 90 Or., it was held, in substance, that, in order for a judgment or decree to stop the running of a statute of limitations, the judgment must be made effective by the execution of a writ of possession, according to the great weight of authority, citing 1 R. C. L. 725 and 2 C. J. 109. In that case, on pages 676 and 677, we find Mr. Justice BURNETT, in passing upon the petition for rehearing, saying:

"The situation before us, then, is that notwithstanding the decree of the circuit court, affirmed by this court, he [plaintiff] still remains in the actual possession of the estate * * * saying, in effect: 'Notwithstanding all your claims and all your decrees, I am still here in possession, and have been now for more than 10 years, claiming openly, notoriously and exclusively a title adverse to you and to all others,

whereby I have become the owner in fee simple of this land, based upon which I have brought ejectment against you.' * * * There must be an actual delivery of possession and not a mere judgment for the same, to interrupt the running of the statute.''

We note the case cited by defendant of *Root v. Woolworth,* supra, where the syllabus reads:

''Where the court has decreed that the plaintiff has the title to the land as against the defendant, the subsequent possession by the latter is presumed to be in subordination to plaintiff's title, without express notice is given that defendant is claiming adversely; and length of time of such possession will not give defendant any better right than he previously had.''

In that case a bill was filed for the purpose of carrying into execution a former decree of the court rendered in 1873, against the appellant and Oliver P. Morton. The appellant contended that he had been in adverse possession of the premises since 1869. It appeared that he did not reenter or take possession thereof after the decree until 1888. There was a break in the continuity of the possession of the party claiming by adverse possession, measured by time of 15 years. The facts differ radically from the case at bar.

The following rules are applicable, as plaintiff's claim to have had adverse use of the waters of Goodrich creek for a period of more than 10 years prior to August 20, 1929, and since the rendition of the decree March 18, 1918.

 The statute of limitations runs against the city in its proprietary or business capacity: *Phillips v. Leininger,* 280 Ill. 132 (117 N. E. 497, 498.) A city can lose its water rights by adverse possession and user by another, amounting to prescription. 3 Kinney on Irrigation and Water Rights (2d Ed.) p. 2599, § 1441. The

power to provide a water system is not governmental or legislative in character, but strictly proprietary, and the city engaged in the prosecution of such an improvement and selling water for gain, is clothed in such authority and subject to the same liabilities as a private person: *Tone v. Tillamook,* 58 Or. 382, 386 (114 P. 938); *Twohy v. Ochoco,* 108 Or. 1, 40 (210 P. 873, 216 P. 189), and cases there cited. Title by adverse possession is acquired by actual possession or use by one in a manner that is open, notorious, exclusive, hostile, under claim of right, exclusive of any other right, and continuous and uninterrupted for a period of 10 years, and a title thus acquired remains in the person so acquiring it as completely as if conveyed to him by deed from the owner: 2 Kinney on Irrigation and Water Rights (2d Ed.), p. 1876, § 1048; *Gardner v. Wright,* 49 Or. 609, 629 (91 P. 286). Adverse possession began at the time the use of the water by plaintiffs interfered with the right of the defendant to such an extent that defendant would have had a cause of action therefor: *Davis v. Chamberlain,* 51 Or. 304, 316 (98 P. 154). After such adverse possession began, continuity of possession and use by the plaintiffs could only be broken by the defendant interfering with such possession, with an intention on the part of defendant not only to deprive plaintiffs of possession but also to oust plaintiffs from their title claimed by them. 2 C. J. 96, § 118; *Thomas v. Spencer* 69 Wash. 433 (125 P. 361, 362); *Illinois Steel Co. v. Budzisz,* 115 Wis. 68 (90 N. W. 1019, 1025, 1026).

The testimony in the case discloses that since March 18, 1918, plaintiffs used the waters of Goodrich creek to the extent of 80 miner's inches, openly, notoriously, adversely, and legally hostile to the claims of

the rights of defendant; that this use continued until August 20, 1929, which would be more than the statutory period of ten years. During such time this additional water so used by plaintiffs was actually needed by the city of Baker for use in its municipal affairs, except in an occasional year, when there had been an unusually good fall of rain during the spring and summer.

There is practically no dispute as to the facts in the case. Mr. George Henry, who was water commissioner of the city of Baker continuously from July 2, 1906, to the time of the trial, testified that in 1926 he was not aware of any adjudication giving the city of Baker priority over the Ebells, and, further, that at that time he believed the Ebells had the first right; that he always took it for granted that the Ebell right was first in time; that when he took water from the creek he respected that prior right and recognized it; that every time he talked to the Ebells about their water, they always claimed to be first in right; that the construction of the extension of the pipeline to Goodrich creek in 1917 was for the purpose of getting more water for the city of Baker, and that in such construction and in the installation of the measuring device he acted upon the belief that the Ebells had the first right to the waters of Goodrich creek; that in installing the measuring weir in the settling tank at the junction of the city pipeline with Goodrich creek, he had in mind its use for the measuring out to the Ebells of the waters to which they were entitled; that the first time the record of the adjudication of Powder river was called to his attention was October, 1927. Other officials of the city testified to much the same effect.

It is also apparent from the record that the plaintiffs have had actual possession and use of the water and that such use has been open, notorious, exclusive and hostile to the defendant's title, and has continued for more than ten years between the date of the decree, March 18, 1918, and the 20th day of August, 1929, when defendant asserted the right to take the water. There was only one time, in 1926, when there was any interference with plaintiffs' right by defendant. At that time the question arose over seepage waters from the city's Goodrich creek reservoir. One of the plaintiffs took the matter up with the water commissioner and it was referred to the mayor. Plaintiffs' rights were recognized as being first, and the water commissioner was directed to so divide and distribute the water. No further question was raised until after the 10-year period, and the use of the water by plaintiffs was not interrupted between the date of the decree and August 20, 1929. The evidence in the case supports the allegations of plaintiffs in their complaint and reply. The equities are with the plaintiffs.

The plaintiffs also assert that defendant city is estopped from asserting title to a priority of water right over plaintiffs under the decree of 1918, by its acts and the acts and representations of its officials for a long period of years to the effect that the Ebells' right was prior, which representations were relied upon by plaintiffs and acted upon to their prejudice in improving and irrigating their lands. We do not deem it necessary to consider this feature of the case on account of our findings heretofore expressed, although in its governmental capacity a municipality cannot be bound by any act committed ultra vires by its officials, but in the exercise of its private or pro-

prietary powers—that is, the construction and operation of waterworks—a municipality is subject to estoppel by its acts and failure to act by officials and employees to the same extent as any private corporation, according to some authorities: 21 C. J. 1185, 1190, §§ 190, 193; *City of Seattle v. Stirrat,* 55 Wash. 560 (104 P. 834, 836, 24 L. R. A. (N. S.) 1275).

The actions of the defendant, by its officials in distributing the water to plaintiffs for a long time, verges closely upon a construction of the decree of 1918 in favor of plaintiffs' right, as claimed by them.

The decree of the circuit court is affirmed.

ROSSMAN and KELLY, JJ., not sitting.