Argued May 7, reversed, suit dismissed September 18, petition
for rehearing denied December 18, 1957

## CALDERWOOD ET AL v. YOUNG

315 P. 2d 561
319 P. 2d 184

*James M. Burns,* of Portland, Special District Attorney for Harney County, argued the cause for appellant. With him on the brief were L. L. Jensen, of Burns, District Attorney for Harney County, and Pat H. Donegan, of Burns, Special District Attorney for Harney County.

*P. J. Gallagher,* of Ontario, argued the cause for respondents. With him on the brief were Gallagher & Gallagher, of Ontario.

Robert Y. Thornton, Attorney General for Oregon, and John D. Nichols, Assistant Attorney General, both of Salem, filed a brief of Amicus Curiae.

Before Perry, Chief Justice, and Brand, McAllister and Kester, Justices.

BRAND, J.

This suit was brought by J. E. Calderwood and wife, and Phillip Defenbaugh, as plaintiffs, against the defendant Clarence Young, Watermaster of Harney County. The plaintiffs sought an injunction restraining the watermaster from interfering with the alleged rights of the plaintiffs to the use of the waters of Trout Creek. After trial the circuit court entered a decree enjoining the Watermaster from interfering with the respective plaintiffs in their right to the use of the waters of Trout Creek as determined by that decree.

The defendant appeals. The respective plaintiffs are owners of arid lands through which Trout Creek flows. For the purpose of irrigating said lands the predecessors in interest of the respective plaintiffs diverted the waters of Trout Creek by means of dams and ditches onto their respective tracts of land and used the water beneficially for irrigation. Plaintiffs Calderwood alleged that their predecessors in interest first began a beneficial use of the waters of Trout Creek in the year 1888 and it is alleged that the predecessors in interest of the plaintiff Defenbaugh first began a beneficial use of the waters of Trout Creek in 1887. The plaintiffs' complaint was filed on 31 May 1955. It is alleged that they have acquired a prior and superior right to the waters of Trout Creek. The basis of their claims is set forth in paragraph "VIII" of the complaint, and reads as follows:

"That each of the respective plaintiffs and their respective predecessors in interest have continu-

ously each year, openly, notoriously, under a claim of right and without interruption, except for the wrongful and unlawful acts of the defendant more particularly hereinafter mentioned, diverted and used the waters of Trout Creek as aforesaid for the irrigation of their respective lands, that said use has been exclusive against all the world and continued for more than 30 years last past, and prior to the commencement of this suit."

It will be observed that the alleged duration of the adverse use of the waters was for the period of 30 years immediately preceding 31 May 1955 and therefore commenced at some time prior to 31 May 1925. The quantity of water diverted in any season or on any specified tract of land is not stated. The charge against the watermaster is that he and his deputies have closed the headgates and means of diversion of said water of Trout Creek onto the lands of the plaintiffs and have posted notices forbidding plaintiffs from opening headgates and have caused the arrest of the plaintiff J. E. Calderwood, and that the defendant is depriving the plaintiffs of the use of the waters of Trout Creek and is delivering water to which the plaintiffs claim a prior and superior right to divers other persons with lands below the diversions of the plaintiffs. The prayer of the complaint is for an injunction restraining the defendant from further threatened interference with plaintiffs' alleged rights.

The defendant admits that as watermaster he has interfered with the diversion and use of waters of Trout Creek by the plaintiffs and has charged the plaintiff J. E. Calderwood "with the crime of use of water denied by Watermaster". See ORS 540.710.

As an affirmative defense defendant alleges that he is the watermaster of Water District No. 7, State of Oregon, which comprises most of Harney County,

and which includes the Trout Creek water shed and area. He alleges that under ORS 540.040 he has the duty of regulating the distribution of water among the various users of water from Trout Creek pursuant to the adjudication of such rights made by decree of the Circuit Court of the State of Oregon for Harney County which was made and entered on the 23rd day of February, 1916, in the case of *Hill et al. v. American Land and Livestock Company et al.* Defendant alleges and plaintiff admits that

> "the respective rights of the various parties claimant to the waters of Trout Creek and its tributaries, Little Cottonwood Creek and Willow Creek, were adjudicated and determined; that one of the defendants therein appealed from said decree and the aforesaid decree was affirmed by the Supreme Court of the State of Oregon in the case of Hill et. al. vs. American Land and Livestock Company et. al., reported at 82 Or. 202."

In paragraph "IV" of his separate answer the defendant enumerates in detail the provisions of said 1916 decree by which the predecessors of the plaintiffs were awarded water rights, and he alleges that the rights enumerated constitute the only water rights awarded to the lands described in the plaintiffs' complaint by the decree of 23 February 1916 as affirmed by the Supreme Court of the State of Oregon, and that the predecessors of the plaintiffs were parties plaintiff who appeared in said case, and that none of the plaintiffs therein appealed from the decree of the court. The allegations of paragraph "IV" are admitted by the plaintiffs. The defendant also alleges in his answer that a certificate of water right was awarded to the plaintiffs' predecessor, Mr. Al Wallace, being Certificate No. 11459, with a priority date of 2 February 1917, and that in addition, a permit was awarded to the

plaintiffs Calderwood, being Permit No. 19141, with a priority date of 27 December 1949, for the diversion of the surplus waters of Trout Creek. The extent of the rights granted by the certificate and by the permit and the lands benefited thereby are described in paragraph "IV" of defendant's separate answer, and these allegations are admitted by the plaintiffs. The defendant alleges and the plaintiffs deny that the water rights granted by the decree of 23 February 1916 and the water rights evidenced by Certificate No. 11459 and Permit No. 19141 are the only water rights possessed by plaintiffs for the irrigation of the lands described in plaintiffs' complaint. It is the contention of the watermaster that he has administered the waters of Trout Creek in accordance with the terms of the decree of 23 February 1916 and with the terms of any permits granted by the state engineer subsequent to said decree "allocating the waters first to the lands with the priority date of 1884 and then to the lands with subsequent priority dates, in amounts, for the periods, and in the manner prescribed by said decree and prescribed below   *   *   *." In the year 1909 a comprehensive water code was adopted by the State of Oregon which marked radical departure from the previous provisions of law relative to the appropriation of water. Laws of Oregon, 1909, Ch 216, p 319.

■ The contest herein is between the watermaster who has been enforcing the provisions of the 1916 decree and of the certificate and the permit subsequently issued, on the one hand, and the plaintiffs who claim that they have acquired by open, adverse, notorious and continuous use of water rights superior to those granted to them or their predecessors by the decree and superior to the rights granted to lower users of the water by said decree. This being a suit in equity for

injunction, our first question is whether the court had power under the circumstances stated to issue an injunction restraining the watermaster from enforcing the terms of the decree of 1916 as written.

The defendant has with clarity set forth the facts and issues in his brief. We will summarize that portion of his statement to which the plaintiffs say that they "have no serious objection." The 1916 decree awarded to the ranches and water users below the plaintiffs' land the earliest water rights on the stream. Some two thousand acres of those ranches were awarded a priority of 1884, while by that same decree the plaintiffs and their predecessors in interest received later priorities, largely of 1887 and 1889, for the irrigation of some 420 acres of land. Plaintiffs Calderwood in addition to the priorities granted by the decree thereafter acquired a field of 135 acres having a 1917 priority. This land is referred to as the Miller Field. We quote:

"The plaintiffs contend that on their ranches and on the Miller Field that they acquired superior rights to the users with 1884 rights by means of adverse use since the 1916 decree, and hence that the Defendant Watermaster should, to that extent, be enjoined from following the 1916 decree in distributing the waters of Trout Creek."

The first question which requires attention is whether the plaintiffs were entitled to maintain a suit for injunction against the watermaster even assuming that they had by adverse use acquired rights against the lower proprietors and had thereby gained enlarged rights to the use of the water over and above those awarded to them by the decree of 1916. The watermaster contends that the court erred in awarding to plaintiffs an injunction or any other relief in this suit

against him, in view of the provisions of ORS 540.740. The Attorney General has filed a brief as amicus curiae in which he strongly supports the position taken by the watermaster. Relevant provisions of statute are as follows:

"Each watermaster:

"(1) Shall divide the water of the natural streams or other sources of supply of his district among the ditches and reservoirs taking water therefrom, according to the rights of each, in whole or in part; and shall shut and fasten, or cause to be shut and fastened, the headgates of ditches.

\* \* \* \* \*

"(3) May regulate the distribution of water among the various users of water from any stream where the rights have been determined by decree of court, or established under an order of the State Engineer in proceedings for the determination of the relative rights to the use of water, or established through permits to appropriate water or certificates of water right issued by the State Engineer in accordance with the priority of such use, and such authority extends to the distribution of water among the various users under any partnership ditch or from any reservoir where rights have been so determined.

\* \* \* \* \*

"(5) Shall, as near as may be, divide, regulate and control the use of the water of all streams within his district by such closing or partial closing of the headgates as will prevent the waste of water, or its use in excess of the volume to which the owner of the right is lawfully entitled." ORS 540.040.

"Any person who may be injured by the action of any watermaster may appeal to the circuit court for an injunction. The injunction shall only be issued in case it can be shown at the hearing that the watermaster has failed to carry into effect the order of the State Engineer or decrees of the court

determining the existing rights to the use of water." ORS 540.740.

The origin of these provisions will be found in Laws of 1909, Ch 216, §§ 38 and 39, and Laws of 1919, Ch 94; Laws of 1953, Ch 395.

The pleadings and evidence disclose that the plaintiffs' complaint is not that the watermaster has failed to carry into effect the order of the state engineer or decrees of the court determining the existing rights to the use of water, but on the contrary, the complaint is that he has been enforcing such order and decree as against plaintiffs' contention that the rights and priorities established by the decree are no longer valid because of alleged prescriptive rights claimed by the plaintiffs. The provisions of ORS 540.740 grant to one who may be injured by the action of the watermaster the right to seek an injunction, but the statute in clear language limits the right of any injured person to such relief to cases in which he can show that the watermaster has failed to do the very thing that the record here shows he was doing.

The entire controversy revolves around the plaintiffs' claim that they have acquired rights superior to the adjudicated rights of the lower landowners. The defense of the watermaster is that he has been enforcing the court's decree and the rights therein determined. If the real controversy were whether the watermaster was acting in violation of adjudicated rights of the plaintiffs, a wholly different question would be presented. But in this case, to issue an injunction against the watermaster would be a direct violation of an express statutory prohibition. The plaintiffs utterly fail to meet this issue or to show that the statute does not mean what it says. If injunction relief was the

only possible remedy for the protection of a property right, a different problem would arise. But the fact that an injunction cannot be issued in this case does not imply that there are not other remedies which were available to the plaintiffs for the enforcement of their rights if they have any. The difficulty is that plaintiffs have not availed themselves of any procedure appropriate for the purpose of seeking a determination of the alleged rights. Plaintiffs apparently appreciate the weakness of their position in seeking an injunction which is the only specific relief for which they have asked. In conclusion to their brief plaintiffs say this case "is simply a suit to quiet title to water rights * * * against the present claims of earlier rights." The watermaster was not a claimant of property rights adverse to plaintiffs. He was not the agent of the water users whose rights the plaintiffs claim to have destroyed by adverse user. He was simply an administrative officer of the state. *Norwood v. Eastern Oregon Land Co.*, 139 Or 25, 5 P2d 1057, 7 P2d 996. Plaintiffs would probably not argue that they could quiet title against X, a landowner, by suing only Y, a policeman who ejected them from the land of X. This cannot be treated as a suit to quiet title because the persons against whom plaintiffs seek to quiet title are not parties to the case. It would appear to be hornbook law that one seeking to quiet title must sue the person against whom he seeks to quiet his title. ORS 105.605. Nor will we adopt a tortured construction of the pleadings by treating the case as one for a declaratory judgment. ORS 28.110; *Stanley v. Mueller*, 211 Or 198, 315 P2d 125.

■ This court should always be slow to treat a suit brought for one form of relief as an other and different kind of procedure, thereby depriving a defendant of

the opportunity before the trial court to challenge the appropriateness of the procedure adopted in the complaint.

■■ On the main issue, so ardently presented in the briefs as to the right of an upper appropriator to deprive lower owners of their adjudicated priorities by the open adverse and notorious use of water in excess of that awarded to him in the decree, thereby depriving the lower owners of water adjudicated to them, we have only this to say: We think it clear that the general adjudication of the rights of the parties clearly establishes their rights as of the date of the decree. If adverse possession can upset the decree it must be by virtue of events occurring subsequent to the decree. The Water Rights Act provides:

> "Subject to existing rights, and except as otherwise provided in ORS chapter 538, all waters within the state may be appropriated for beneficial use, as provided in the Water Rights Act and not otherwise; but nothing contained in the Water Rights Act shall be so construed as to take away or impair the vested right of any person to any water or to the use of any water." ORS 537.120.

Claims to vested rights are to be adjudicated by the statutory procedure and that adjudication is final subject to appeal. *Ebell v. City of Baker,* 137 Or 427, 435, 299 P 313.

We have grave doubts as to whether it is possible for a person to acquire title to water by prescription under the Water Code and after a blanket adjudication of water rights by the courts. The intent of the statute appears to be hostile to the acquisition of rights except as prescribed in the statute. We find persuasive reasoning and authorities which are contrary to that

part of the decision in the Ebell case which recognized the right to acquire water rights by prescription.

The court is always reluctant to overrule a previous decision unless the necessity therefor is apparent in the subsequent litigation. It is not necessary to decide the question in this case and we therefore refrain from so doing.

The decree of the circuit court is reversed and the suit is dismissed.

## ON REHEARING

Martin P. Gallagher, of Ontario, Koerner, Young, McColloch & Dezendorf, and Frank C. McColloch, of Portland, for the petition.

BRAND, J.

The plaintiffs have filed a petition for rehearing. The grounds specified in the brief supporting the petition are as follows:

"(1) The Opinion errs in holding that Plaintiffs' case against the Watermaster was based solely upon adverse use;

"(2) The Opinion errs in failing to note that in two important respects the Watermaster is failing to administer the waters in accordance with the provisions of the 1916 Decree in the Hill case and for that reason the Opinion errs in its basic conclusion that ORS 540.740 forbids the issuance of an injunction against him;

"(3) The Opinion is in error in expressing doubt that the Plaintiffs may lawfully assert their alleged prescriptive rights in any case; and

"(4) The Opinion errs in reversing the Circuit Court and dismissing the suit."

■ The contention that plaintiffs were entitled to an injunction against the Watermaster because he was "failing to administer the waters in accordance with the provisions of the 1916 decree" is obviously an afterthought, and now comes too late.

The complaint contains no mention of the 1916 decree and asserts no claim based upon anything except adverse possession. The assertion that the defendant threatens to continue to deprive plaintiffs of the use of the waters of Trout Creek of necessity applies to an alleged deprivation of the only rights which the plaintiffs claim to possess, namely, rights acquired by adverse possession.

The defendant Watermaster in his answer admits that plaintiffs have diverted water pursuant to the decree of February 23, 1916. He admits that he will continue to administer the waters of Trout Creek in

accordance with the decree. He alleges that the water rights granted by the decree and by Certificate No. 11459 and Permit No. 19141 are the only water rights possessed by plaintiffs and that he has administered the waters in accordance with the decree and permits.

It is further alleged by the Watermaster that the Calderwoods refused to comply with the instructions of the defendant "which instructions were issued in conformance with the aforesaid decree." This allegation is not denied by the plaintiffs and is therefore admitted. The plaintiffs in their reply "deny that they irrigated the same pursuant to said Decree or in accordance with the terms thereof" and allege that they rely on adverse use.

In spite of the condition of the pleadings as above indicated, plaintiffs now claim that they are entitled under the pleadings to an injunction against the Watermaster because in their reply they denied the allegation of the Watermaster that he has administered the waters in accordance with the decree of February 23, 1916. Neither pleadings nor briefs authorize them to make such a contention at this time. In neither complaint nor reply is there a single allegation as to any failure by the Watermaster to enforce any specific provision of the 1916 decree which is favorable to the plaintiffs. Nor is there any allegation that defendant threatens to deprive plaintiffs of the benefits of the 1916 decree in the future. The parties have definitely committed themselves to trial on the issue of adverse use and possession and we decided the case on that issue.

It need scarcely be said that we recognize the duty of the Watermaster to enforce the provisions of the 1916 decree, including the provisions thereof which are favorable to the plaintiffs, as well as those favor-

able to the other water users. We find no allegation even tending to show any intention to fail in the performance of that duty.

If in the future the defendant shall fail to give to the plaintiffs the rights to which they are entitled under the decree and the permits, plaintiffs may invoke the powers of equity to protect such rights, namely, those rights which they solemnly declare are not the basis of their pending claim. A reading of the briefs will demonstrate that the parties based their claims on the issue which we have decided.

We have considered the contentions in the petition for rehearing and find them without merit. The petition is denied.